PEARSON, MJ.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| STEVO DJURIC, | ) | CASE NO.  1:07CV3416 |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) | JUDGE SOLOMON OLIVER |
|  | ) |  |
|  | ) | MAGISTRATE JUDGE |
| v. | ) | BENITA Y. PEARSON |
|  | ) |  |
| DAVID BOBBY, WARDEN, | ) |  |
|  | ) |  |
|  | ) |  |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

**Introduction**

This Report and Recommendation responds to a petition for a writ of habeas corpus filed

by Petitioner Stevo Djuric, pursuant to 28 U.S.C. § 2254.  At the time of filing, Djuric had just

been released from Belmont Correctional Institution in St. Clairsville, Ohio where he had been

incarcerated to serve a four-year aggregate sentence imposed following his January 4, 2006

convictions in Cuyahoga County, Ohio, Court of Common Pleas, on numerous charges related to

the gross sexual imposition of a minor victim.

Djuric's petition raises seven Grounds for Relief.[1]  Respondent urges the dismissal of the

entire petition.  Specifically, Respondent argues that: Grounds One, Four, Five, and Seven should

be denied because the State court adjudications were not contrary to or based upon objectively

unreasonable applications of clearly established federal law; Ground Two is procedurally

---

[1]  Each Ground for Relief is fully reprinted in Appendix C, attached.

(1:07CV3416)

defaulted or, in the alternative, should be denied on the merits; Ground Three is procedurally

defaulted; and Ground Six is not cognizable under 28 U.S.C. § 2254.

For the reasons that follow the undersigned recommends that each Ground for Relief be

denied and that the petition be dismissed in its entirety without further proceedings.

## I.  Factual and Procedural Background

### A.  Facts of the Underlying Offense, Disposition of Charges, and Sentencing

#### 1.  Facts and Disposition of the Charges

The State Appellate Court's factual findings shall be presumed correct; petitioner has the

"burden of rebutting the presumption of correctness by clear and convincing evidence."  28

U.S.C. § 2254(e)(1).  The Court of Appeals of Ohio, Eighth Appellate District (also "State Court

of Appeals), recited the facts and disposition as follows:

> [*P1] Defendant-appellant, Stevo Djuric, appeals the finding of guilt and his sentence
> in the Cuyahoga County Court of Common Pleas. For the following reasons, we
> affirm the finding of guilt, but vacate his sentence and remand for resentencing.

> [*P2] On April 17, 2004, the victim and her sister were visiting with their father at
> his apartment in Lakewood. Djuric lived in the same apartment complex as the
> father.  While the father was outside with his daughters, Djuric came outside and
> invited them up to share candy and cookies for his birthday.  The father declined, but
> Djuric insisted.

> [*P3] They went to Djuric's apartment. Dolores Cosic, Djuric's roommate, came out
> of the bedroom and sat at the table. The girls were given pop and candy.  The father
> had a beer, and Djuric was drinking alcohol.

> [*P4] Soon after entering the apartment, Djuric told the girls to come to the bedroom
> to help him find the cat. This happened at least two times. Both times when the girls
> were in the bedroom, Djuric touched the victim's breasts and digitally penetrated her.
> The victim was ten years old at the time.

> [*P5] When they left Djuric's apartment, the father took the girls to Burger King. On

2

(1:07CV3416)

their way home, the victim told her father that Djuric had touched her. The father called the police.

[*P6] Officer Robert Moher of the Lakewood Police Department was first to arrive, and observed that the victim was crying and visibly upset. She told Officer Moher that Djuric grabbed her "underneath" while in the bedroom. Officer Heather Herpka was called in to interview the victim. Meanwhile, Officer Moher went to Djuric's apartment to speak with him, but he was out.

[*P7] Officer Herpka learned that Djuric had fondled the victim's breasts twice, touched her vaginal area twice, and digitally penetrated her twice. Officer Herpka went with the victim and her father to Lakewood Hospital where a rape kit was performed. Officer Herpka learned that the victim's vaginal area was red and irritated.

[*P8] Nurse Lisa Grafton testified that the victim was visibly upset when she, the nurse, performed the initial exam. Nurse Grafton testified that she observed the redness and that, relying on her experience, it was likely caused by "something that doesn't belong there."

[*P9] Dr. Thomas A. Waters testified that he treated the victim in the emergency room. He testified that the victim was visibly upset and withdrawn during the examination and administration of the rape kit. After the exam, he reported erythema (redness, irritation) on the outside genitalia and visible vaginal mucosa (the lining of the vagina was red) and the victim's hymen was not intact. Dr. Waters concluded with a reasonable degree of scientific certainty that the redness was caused by possible manipulation of the genitalia.

[*P10] Detective Leslie Wilkins from the Lakewood Police Department testified about her investigation and interview with Djuric. Det. Wilkins interviewed Djuric after she read and explained to him his Miranda rights and Djuric waived these rights. Det. Wilkins testified that Djuric spoke and understood English, and that during the interview, Djuric told the detective that he told the arresting officers that he could not understand English because he was upset about his arrest. Djuric admitted to inviting the father and his girls up because it was Djuric's 52nd birthday. He denied touching the victim except for her ankles when he pulled her out from under the bed. He claimed she became stuck under the bed while looking for the cat.

[*P11] Cosic [Djuric's roommate] testified for the defense. She testified that she had full view of the bedroom from where she sat and that she did not see Djuric do anything to the victim. She testified that Djuric went into the bedroom for only a short time to retrieve her medications so the girls would not get into them.

3

(1:07CV3416)

> [*P12] Djuric was charged with two counts of rape, two counts of gross sexual imposition, and two counts of kidnaping. All six counts contained sexually violent predator specifications, which eventually were dismissed by the state. Djuric was found guilty of one count of gross sexual imposition and one count of kidnaping with a sexual motivation specification. He was sentenced to a total of four years in prison. Djuric appeals, advancing eleven assignments of error for our review.

ECF No. 6-16 at 3-5.

## 2.  Sentencing

Upon conviction, the State trial court judge initially sentenced Djuric to four years of imprisonment.  After remand and upon re-sentencing, Djuric was released to serve a community control period under the supervision of the Adult Probation Department of Cuyahoga County. ECF No. 6-16 at 4.  On November 18, 2009, Djuric's community control was terminated by deportation.[2]

## B.  Direct Appeal

Djuric, represented by counsel, timely appealed and presented eleven assignments of error to the State Court of Appeals.  *See* Appendix A attached; ECF No. 6-16.  On March 1, 2007, the State Court of Appeals remanded the matter for re-sentencing because the trial court had imposed a sentence greater than the minimum sentence permitted under then existing Ohio law. ECF No. 6-16 at 25 (the Supreme Court of Ohio has since declared unconstitutional and excised from the statutory scheme the statute relied upon by Djuric's sentencing judge, to wit: R.C. 2929.14(B) and R.C. 2929.19(B)(2)).

---

[2]  The undersigned confirmed that Djuric's deportation stemmed from the felony convictions underlying his habeas corpus petition.  As explained in detail below, the Court retains jurisdiction over the pending petition.

4

(1:07CV3416)

On February 12, 2007, Djuric's counsel applied for reconsideration and  moved for

certification of a conflict.  On March 1, 2007 the State Court of Appeals denied both requests.

On April 10, 2007, Djuric's counsel filed a timely notice of appeal and jurisdiction from

the March 1, 2007 judgment by the State Court of Appeals, raising eight assignments of error.

*See* Appendix B, attached;  ECF No. 16-1.

On July 25, 2007, the Supreme Court of Ohio denied Djuric leave to appeal, and

dismissed the appeal as not involving any substantial constitutional question.  Djuric did not seek

further State Court appellate review.

### C.  **Federal Writ of Habeas Corpus**

On November 2, 2007, Djuric's counsel filed a petition for writ of habeas corpus

challenging his January 4, 2006 conviction and presenting seven grounds for relief.  *See*

Appendix C, attached;  ECF No. 1-1.

## II.  **Standard of Review**

This case is governed by provisions of the Antiterrorism and Effective Death Penalty Act

of 1996 ("AEDPA") because Djuric filed his habeas corpus petition after its effective date.  *See*

*Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The Antiterrorism and Effective Death

Penalty Act of 1996 altered the standard of review that a federal court must apply when deciding

whether to grant a writ of habeas corpus.  Before Djuric's claims can be reviewed on the merits

by a federal court, each claim must successfully overcome the procedural barriers of time

limitation, exhaustion, cognizability, and procedural default.  AEDPA governs the Court's

review of each ground of a habeas corpus petition that successfully overcomes these procedural

5

(1:07CV3416)

barriers.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to, or involved an unreasonable application of, clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-413 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 549 U.S. at 74.

Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant State court decision was either (1) "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

As guidance, section 2254(d)(1) defines two categories of cases in which a state

6

(1:07CV3416)

prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

As explained below, certain of Djuric's Grounds for Relief pass procedural muster but fail on the merits when measured against the tests above, *i.e.* Grounds One, Four, Five and Seven.  Grounds Two and Three fail to overcome the procedural barriers of procedural default; Ground Six fails to overcome the procedural barrier of cognizability.

### III.  Procedural Barriers to Review

A petitioner must overcome several procedural barriers before a federal court will review the merits of a petition for a writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." 532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).

### A.  Jurisdiction

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

7

(1:07CV3416)

28 U.S.C. § 2241(a) & (d).

As § 2241 makes clear, in order for a federal court to have subject matter jurisdiction over a habeas petition seeking review of a State prisoner's conviction, two prerequisites must be met. First, the petitioner must be in State custody at the time the habeas petition is filed. 28 U.S.C. § 2254(a). Second, the habeas petition must present a federal question, meaning, the prisoner must challenge the legality of the custody on the ground that it was imposed in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3), 2254(a).

Typically, Djuric's conviction in the Court of Common Pleas, Cuyahoga County, Ohio, within the Northern District of Ohio, alone, would be sufficient to award this Court jurisdiction over his habeas corpus petition. In the instant case, a question regarding jurisdiction arises because, on November 18, 2009, State supervision over Djuric was terminated by deportation.[3] ECF No. 11 at 2.

The questions to be resolved are: (1) whether Djuric's deportation prior to the resolution of his federal habeas corpus petition caused the petition to become moot and (2) whether Djuric's deportation absolve the Court of a case or controversy under Article III, § 2 of the Constitution. Both queries are addressed below.

### 1. Djuric Was in "In Custody" When He Filed His Petition

On January 4, 2006, Djuric was incarcerated at Belmont Correctional Institution

---

[3] During the pendency of his petition, the State of Ohio released Djuric from incarceration on November 1, 2007 and placed him on community control which is also referred to as probation or parole.

8

(1:07CV3416)

in St. Clairsville, Ohio.  On November 2, 2007, the day after his release on community

control, Djuric filed the instant habeas petition.

Historically, the federal courts required the petitioner to be presently confined at

the time the habeas corpus petition was adjudicated to be considered "in custody" for

purposes of federal habeas corpus review.  *See Parker v. Ellis*, 362 U.S. 574, 80 S.Ct.

909, 4 L.Ed.2d 963 (1960) (Supreme Court dismissed petition for lack of jurisdiction

because the matter became moot once the petitioner completed his sentence and was

released from prison).  The definition of "in custody" has since expanded.  It is no longer

a requirement that the petitioner be physically incarcerated at the time his petition is

adjudicated, or even at the time he files his petition.

For instance, a district court may not dismiss a petition for a writ of habeas corpus

as moot based on the fact that a petitioner has been released on parole.  *Jones v.

Cunningham*, 371 U.S. 236, 243, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963).[4]  Similarly, a

petitioner who has been released on personal recognizance *at the time of filing a habeas

corpus petition* is considered to be "in custody" within the meaning of § 2254. *See*

*McVeigh v. Smith*, 872 F.2d 725, 727  (6th Cir.1989)(at the time of filing for habeas

---

[4]    In *Jones v. Cunningham*, the Supreme Court held that a prisoner freed on parole was
in the custody of his State parole board for the purposes of 28 U.S.C. § 2241.  371 U.S. 236, 243
(1963) ("While petitioner's parole releases him from immediate physical imprisonment, it
imposes conditions which significantly confine and restrain his freedom; this is enough to keep
him in the 'custody' of the members of the Virginia Parole Board within the meaning of the
habeas corpus statute . . . ."); *see Rosales-Garcia v. Holland*, 322 F.3d 386, 394-95 (6th Cir.
2003) (en banc); *see also DePompei v. Ohio Adult Parole Auth.*, 999 F.2d 138, 140 (6th
Cir.1993).

(1:07CV3416)

corpus relief, petitioner's one year probationary period was stayed, and she was granted a

recognizance bond); *see also Lawrence v. 48th Dist. Ct.*, 560 F.3d 475, 480-81(6th

Cir.2009) ("Probation's restraints on liberty suffice to satisfy the 'in custody'

requirement.").

Djuric filed the instant habeas corpus petition while on community control, *i.e.*,

while in custody, therefore, he meets the custody requirement for the purposes of

establishing this Court's jurisdiction over his habeas corpus petition.

### 2. Djuric's Deportation Due to the Underlying Conviction Establishes Case or Controversy

An inquiry into whether Djuric's petition is moot due to release from custody does

not end with an affirmative determination of the issue of custody.  In *Spencer v. Kemna*,

the Supreme Court determined that a petitioner's release did not by itself moot his habeas

petition; the Court explained that "[t]he more substantial question . . . is whether

petitioner's subsequent release caused the petition to be moot because it no longer

presented a case or controversy under Article III, § 2, of the Constitution." *Spencer*, 523

U.S. at 7.  "The parties must continue to have a personal stake in the outcome of the

lawsuit.  This means that, throughout the litigation, the plaintiff must have suffered, or be

threatened with, an actual injury traceable to the defendant and likely to be redressed by a

favorable judicial decision." *Id.* (quotations and citations omitted).

On September 4, 2008, Djuric was deported to Bosnia as a direct result of his

convictions for gross sexual imposition and kidnaping of a ten year old, an aggravated

(1:07CV3416)

felony under 8 U.S.C. § 1101 (a)(43(A).[5]  Because Djuric was deported as a result of his

conviction of a felony (1) for which deportation or removal is a statutory consequence

and (2) undergird his habeas corpus petition, Djuric continues to have a personal stake in

the outcome of the instant habeas petition.[6]  Having met the case or controversy and

custody requirements, the Court has subject matter jurisdiction over the instant habeas

petition.

>    **B.   Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) statute of

limitations for filing a petition for a writ of federal habeas corpus is one year, and it begins to run

on the date judgment became final.  28 U.S.C. § 2244(d)(1).  The AEDPA statute of limitations

is not an issue in this matter.

>    **C.   Exhaustion of State Remedies**

As a general rule, a State prisoner must exhaust all available State remedies or have no

remaining State remedies available before a federal court will review a petition for a writ of

habeas corpus.  28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004);

*Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any State procedures for relief

---

[5]  Confirmed by Cheryl Parker, Djuric's former probation officer at the Cuyahoga County Probation Department (ECF No. 11 at 3) and the United States Immigration and Customs Enforcement ("ICE").

[6]  The terms of the relevant immigration statutes are explicit in defining the removal consequences for Djuric's conviction.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ( "Any alien who is convicted of an aggravated felony at any time after admission is deportable."); *see also* 8 U.S.C. §1101 (a)(43)(A) ("the term 'aggravated felony' means  murder, rape or sexual abuse of a minor . . . whether in violation of Federal or State law . . .").

(1:07CV3416)

remain available, then the petitioner has not exhausted all of his State remedies. *Rust v. Zent*, 17 F3d 155, 160 (6th Cir. 1994). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).

For purposes of habeas corpus review, Djuric's grounds for relief are exhausted.

### D. **Cognizability**

State prisoners are entitled to federal habeas corpus relief only when they are in custody due to violations of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). As such, claims for relief based on violations of State law are not cognizable in a federal habeas proceeding, *i.e.*, a federal court cannot review claims of State law violations presented in a petition for habeas corpus relief. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

Rulings by the State's highest court on matters of State law are binding on federal courts. *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). Further, a federal court may not second-guess a State court's interpretation of its own procedural rules. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988). Thus, even if a State court errs in applying its own procedural default statute, the error is not cognizable in federal habeas review. *Simpson v. Jones*, 238 F.3d 399, 406-07 (6th Cir. 2000).

As explained in detail below, Ground Six of Djuric's petition for habeas corpus relief challenges a State court's ruling on a matter of State law and, as such, is not cognizable under § 2254.

12

(1:07CV3416)

### E.  Procedural Default

Procedural default occurs when a petitioner fails to present his constitutional claims fairly

to the highest State court in a federal constitutional context. *Anderson*, 459 U.S. 4 (1982);

*Picard*, 404 U.S. 270 (1971).  Reasons of federalism and comity generally bar federal habeas

corpus review of "contentions of federal law . . . not resolved on the merits in the state

proceeding due to respondent's failure to raise them there as required by state procedure."

*Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and
> adequate state procedural rule, federal habeas review of the claims is barred unless
> the prisoner can demonstrate cause for the default and actual prejudice as a result of
> the alleged violation of federal law, or demonstrate that the failure to consider the
> claims will result in a fundamental miscarriage of justice.

*Coleman v Thompson*, 501 U.S. 722, 750 (1991).

As expounded upon below, Grounds Two and Three of Djuric's petition for habeas corpus

relief  are procedurally defaulted.

## IV.  LAW AND ANALYSIS

### A.  Grounds Two and Three are Procedurally Defaulted

In Ground Two[7], Djuric alleges he was denied his constitutional right to a public trial

when the court ordered that the courtroom be temporarily sealed during the testimony of the

minor victim.  Djuric claims that his counsel objected to the sealing of the courtroom during a

---

[7] **Ground for Relief No. 2: Six and Fourteenth Amendment**.
    **Supporting Facts**: Petitioner was denied his constitutional right to a public trial
    when the court ordered that the courtroom be sealed during the testimony of
    Natalie Leissa.  ECF No. 1 at 3.

13

(1:07CV3416)

discussion at side-bar.  In Ground Three, Djuric alleges he was denied due process of law when a trial court failed to conduct a pre-trial evidentiary hearing concerning Djuric's motion to suppress. ECF No. 1 at 4.  Djuric claims he brought to the trial judge's attention the fact that there was an outstanding motion before the trial began.[8]  ECF No. 7 at 8.

Respondent contends that both Grounds Two and Three are procedurally defaulted because Djuric failed to object at the time of the alleged constitutional violations and, therefore has waived the ability to raise these arguments.  ECF No. 6 at 26-30.  Because both Grounds Two and Three relate to a failure to object at trial the undersigned will examine Grounds Two and Three together.

### 1.  More on Procedural Default

A claim may become procedurally defaulted in two ways.  *Id.*  First, a petitioner may procedurally default a claim by failing to comply with State procedural rules in presenting his claim to the appropriate State court.  *Id.; see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to the petitioner's failure to comply with the procedural rule, the State court declines to reach the merits of the issue, and the State procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.  *Id.*

Second, a petitioner may procedurally default a claim by failing to raise a claim in State court and pursue that claim through the State's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848-7 (1999).  If, at the time of the federal habeas petition,

---

[8] Although Djuric did request that the court revisit his motion to suppress (ECF No. 6-15 at 14) at the close of the State's case, he did not object to the trial going forward without a hearing or a ruling on his motion to suppress. (ECF No. 6-15 at 13).

14

(1:07CV3416)

State law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted.

*Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Thompson*, 501 U.S. at 731-2.  This

second type of procedural default is often confused with exhaustion. Exhaustion and procedural

default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to

remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where

State court remedies are no longer available to a petitioner because he failed to use them within

the required time period, procedural default and not exhaustion bars federal court review.  *Id.*  In

Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those

claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a

claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

 The Sixth Circuit uses a four-step analysis to determine whether a claim is procedurally

defaulted.  *Maupin*, 785 F.2d at 138-39.  Under this test, the Court decides (1) whether the

petitioner failed to comply with an applicable State procedural rule, (2) whether the State courts

actually enforced the State procedural sanction, (3) whether the State procedural bar is an

"independent and adequate" State ground on which the State can foreclose federal review, and

(4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.*; *Barkley v. Konteh*, 240

F.Supp.2d 708 (N.D. Ohio 2002).

 A petitioner's procedural default may be excused upon a showing of "cause" for the

procedural default and "actual prejudice" from the alleged error.  *Maupin*, 785 F.2d at 138-39.

"Demonstrating cause requires showing that an 'objective factor external to the defense impeded

counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412,

15

(1:07CV3416)

417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Ineffective

assistance of counsel can be cause for a procedural default. *Carrier*, 477 U.S. at 488. However,

the exhaustion doctrine "generally requires that a claim of ineffective assistance be presented to

the state courts as an independent claim before it may be used to establish cause for a procedural

default." *Id*. at 489. Meanwhile, "[d]emonstrating prejudice requires showing that the trial was

infected with constitutional error." *Id.* However, it is not necessary to resolve the issue of

prejudice if a petitioner has not shown cause. *See Smith v. Murray*, 477 U.S. 527, 533 (1986);

*Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice." *See Thompson*, 501 U.S. at 749-50.

Conclusory statements are not enough-a petitioner must "support his allegations of constitutional

error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v.*

*Delo,* 513 U.S. 298, 324 (1995); *See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio

2007).

**2.  Procedural Default As Applied to Grounds Two and Three**

"Ohio employs a contemporaneous-objection rule, under which 'an appellate court will

not consider any error which counsel for a party complaining of the trial court's judgment could

have called but did not call to the trial court's attention at a time when such error could have

been avoided or corrected by the trial court.'" *Shafer v. Wilson*, 364 Fed. Appx. 940 (6th Cir.

2010) (quoting *State v. 1981 Dodge Ram Van*, 522 N.E.2d 524, 526 (Ohio 1988)). Based upon

16

(1:07CV3416)

the record before the Court, Djuric violated the Ohio contemporaneous-objection rule when he

failed to object at trial to the perceived errors discussed in Grounds Two and Three.  The record

indicates that Djuric did not object at trial when the Court temporarily sealed the courtroom[9]; nor

did Djuric object when the trial judge began the trial without ruling on his outstanding motion.[10]

Where a petitioner fails to comply with a State procedural rule this Court must look to the

*Maupin* test to determine whether petitioner's noncompliance bars habeas review.  *See Maupin,*

*785 F.2d at 138* (a petitioner may procedurally default a claim by failing to comply with state

procedural rules in presenting his claim to the appropriate State court).

Using *Maupin's* test as the measure, the Court finds that the facts underlying the issues

contained in Grounds Two and Three satisfy the first three pongs of *Maupin*.  *Id*. at 138-39.

With respect to the first and second prong, the record reflects that Djuric failed to adhere to the

contemporaneous objection rule, and the State enforced that rule when it denied Djuric's grounds

of relief on that basis.[11] Additionally, the third prong of the *Maupin* test is also satisfied as it well

---

[9]  The State appellate court decision reflects that the judge limited movement in and out
of the courtroom, rather than "sealing" it.  After the twelve-year-old victim showed reluctance to
testify about the places on her body where Djuric had allegedly touched her, the trial court judge
did not seal the courtroom; rather, for the balance of the testimony, he ordered that spectators not
move in and out of the courtroom.  The record does not reflect an objection by Djuric's counsel
to this discretionary ruling.  ECF No. 6-15 at 12.

[10] Similarly, the record does not reflect that Djuric objected to the trial going forward
without a hearing or ruling on his motion to suppress.  ECF No. 6 at 29 (citing Ex. 14 at p. 11).
As the Appellate court held, "Djuric should have raised an objection to the trial court's action
prior to the commencement of trial." ECF No. 6-15 at 13

[11]  The State appellate court informed Djuric that "his failure to object to closing of the
courtroom constitutes a waiver of the right to public trial."  ECF No. 6-15 at 12.  With respect to
the alleged error of the trial court to conduct a pretrial hearing on Djuric's motion to suppress the

17

(1:07CV3416)

settled that Ohio's contemporaneous objection rule constitutes an adequate and independent State

ground on which the State can foreclose federal review.  *See Hinkle v. Randle*, 271 F.3d 239, 244

(6th Cir. 2001) (stating that Ohio's contemporaneous objection rule is an adequate and

independent basis for *Maupin* purposes).

Because the first three prongs of *Maupin* are satisfied, the Court finds that Grounds Two

and Three are procedurally defaulted.  *Maupin*, 785 F.2d at 138.  But under the fourth prong of

the *Maupin* Test, the Court may still review Djuric's grounds for relief, if Djuric can demonstrate

cause for the default and actual prejudice as a result of the alleged violation of federal law, or that

failure to consider the claim will result in a fundamental miscarriage of justice.  *See Coleman v.*

---

Appellate court stated that "Djuric should have raised an objection to the trial court's action prior to commencement of trial, and failure to object waives any error."  ECF No. 6-15 at 13.

Additionally, the record reflects that the State appellate court reviewed Grounds Two and Three under plain error analysis. "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006).

In regards to Ground Two, the State court conducted plain error analysis when it assumed "for the sake of argument" that Djuric's counsel had objected.  ECF No. 6 at 27.  Even against that standard, the Appellate Court found that the trial court had "legitimately exercised its discretion barring movement in and out of the courtroom" in hopes of alleviating undue embarrassment, commensurate with the United States Supreme Court ruling in *Globe Newspaper Co. v. Superior court for the* Cty. Of Norfolk, 457 U.S. 596, 608.  ECF No. 6-15 at 11-12.  With respect to Ground Three, the State court conducted plain error analysis when it concluded that pursuant to State law, the Court could have denied the motion to suppress without a further hearing.  ECF No. 6-15 at 13-14.

As Respondent pointed out, the State Court of Appeals' alternative review of these claims does not obviate the default.  ECF No. 6-1 at 28.  The Sixth Circuit Court of Appeals has held that "a state court's plain error analysis does not save a petitioner from procedural default." *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

(1:07CV3416)

*Thompson*, 501 U.S. 722, 751 (1991).

### a. **"Cause and Prejudice"**

To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Carrier*, 477 U.S. at 488. Djuric fails to present evidence of an objective factor that may have impeded his efforts to comply with the State procedural rule that clearly states he should timely object to trial court errors. Therefore, Djuric has failed to establish cause for the procedural default of Grounds Two and Three.

Where a petitioner fails to show cause, the Court need not consider whether he has established prejudice. *Umbarger*, 2008 WL 1732950 * 4; *See Engle*, 456 U.S. at 134 n. 43; *Leroy v. Marshall*, 757 F.2d 94, 100 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1985).

### b. **Miscarriage of Justice**

Although he has not shown evidence of "cause and prejudice", Djuric's procedural default may still be excused if he establishes that a fundamental miscarriage of justice will result from the failure to consider the merits of his claims. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see Monzo v. Edwards*, 281 F .3d 568, 575 (6th Cir. 2002). "The 'fundamental miscarriage of justice' test is met only in the 'extraordinary case' where 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004) (*quoting in part Carrier*, 477 U.S. at 496)). The Supreme Court has stated that a claim of actual innocence must be based on factual innocence, not legal innocence. *Vinson v. Gansheimer*, 2009 WL 1514587 *8 (N.D. Ohio

19

(1:07CV3416)

May 29, 2009) (*citing Epps v. Ohio Authorities*, 2007 WL 141963, *2 (N.D. Ohio Jan. 17, 2007).

"The 'fundamental miscarriage of justice' gateway is open to a petitioner who submits new evidence showing that 'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'... 'To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror [or finder of fact] would have convicted him in light of the new evidence.'" *Williams v. Bagley*, 380 F.3d 932, 973 (6th Cir. 2004) (internal citations omitted). Conclusory statements are not enough; petitioner must support his allegations with new reliable evidence that was not presented at trial. *Vinson v. Gansheimer*, 2009 WL 1514587 * 8 (N.D. Ohio May 29, 2009).

Djuric provides no evidence in support of a claim of actual innocence. Djuric has therefore not shown that it is more likely than not that no reasonable fact finder would have convicted him of felonious assault, kidnaping and domestic violence. This is not the extraordinary case where a convicted defendant has shown his actual innocence. As such, the fundamental miscarriage of justice exception does not excuse Djuric's procedural default.

Accordingly, the undersigned recommends the dismissal of Grounds Two and Three as procedurally defaulted.

**B.  Grounds One, Four, Five and Seven are Without Merit**

Grounds One, Four, Five and Seven were each ruled upon by a State court.[12] None of the adjudications were contrary to nor based upon objectively unreasonable applications of clearly established federal law. As explained below, each ground for relief should be denied as without

---

[12] Each Ground for Relief is reprinted in full in Appendix C, attached.

20

(1:07CV3416)

merit.

### 1. **Ground One**

Djuric alleges he was denied a fair trial and due process of law because the trial court judge shook hands with the victim in the presence of the jury and made statements in the presence of the jury which Djuric believes enhanced the credibility of the victim.  ECF No. 6-15 at 6,8.  There is no formal indication in the record that the trial judge shook the victim's hand as Djuric did not object to the alleged interaction when it happened and the record does not otherwise memorialize such an occurrence.  ECF No. 6-15 at 9.  Nevertheless, the State Court of Appeals ruled that the alleged handshake and the preceding comments (which were transcribed along with a curative instruction given at the conclusion of evidence), "if believed, were borderline and implied that the victim was telling the truth," yet "[i]n light of all the evidence put forth corroborating the victim's testimony, [the appellate court could] not say that the outcome of the trial would likely have been different had the trial court not made the improper comments." ECF No. 6-15 at 10 (citing *State v. Chambers*, Cuyahoga App. No. 87323, 2006 Ohio 5326 [citation omitted] ("[t]he granting of a mistrial is necessary only when a fair trial is no longer possible.").   Relying upon *State v. Chambers*, the State Appellate Court determined, that any error was harmless error.  ECF No. 6-15 at 10.

Djuric argues that the State Court of Appeals should have used the constitutional test in *Chapman v. California*, 386 U.S. 18, 24 (1967) to evaluate whether the trial court's error was harmless.  The *Chapman* Court held, "Before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Id.*

(1:07CV3416)

Respondent contends that the State Court of Appeals used the correct constitutional test and that

the adjudication was not contrary to or based on an unreasonable application of federal law. In

reaching that conclusion, however, Respondent, compares the State Appellate Court's analysis to

that in *Litle v. United States*, 510 U.S. 540 (1994). ECF No. 6-15 at 18. The more appropriate

measure is the harmless error standard set forth in *Brecht v. Abramson*, 508 U.S. 619 (1993).

The United States Supreme Court and the Sixth Circuit have adopted *the Brecht*

standard.[13]  In *Fry v. Pliler*, 551 U.S. 112, 127 S.Ct. 2321, 2328 (2007), the Supreme Court

recently reaffirmed use of the standard established in *Brecht*. The *Fry* Court explained " in §

2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-

court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht*[]

whether or not the State appellate court recognized the error and reviewed it for harmlessness

under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman, 386 U.S. 18*

*[1967]*." *Fry v. Pliler*, 127 S. Ct. 2321, 2328 (2007). By this language*, Fry* effectively obviates

Djuric's claim that the State Court of Appeals used the wrong constitutional test. This same

language dictates the application of the *Brecht* harmless error standard.

When applying the *Brecht* standard, rather than placing the burden on either party to

prove the error's effect of influence on the verdict, it is for the judge sitting on habeas review to

decide whether the error so influenced the verdict.  *O'Neal v. McAninch*, 513 U.S. 432, 435-38

(1995). If the judge is sure the error had no or very slight effect of influence, the verdict and

---

[13]  The *Brecht* Court held that, "An error is harmless unless such error had a substantial
and injurious effect or influence in determining the jury's verdict."

(1:07CV3416)

judgment must stand.  *Id.*  If the judge has grave doubt as to whether a trial error of federal law

had substantial and injurious effect or influence in determining the verdict, the judge must treat

the error as if it did and grant the habeas writ.  *Id.* at 435.

In the instant matter, the State Court of Appeals cited and applied the correct

constitutional test.  The State Court of Appeals held that, according to Crim. R. 52 (a) and

*Brecht,* the actions of the trial court amounted to harmless error because of: (1) the totality of the

evidence including medical evidence, testimony of the nurse, the fact that the victim's hymen

was not intact, and the fact that victim was subjected to vigorous cross examination to test her

credibility; and (2) the courts curative instructions to the jury to disregard anything the court may

have done that might reflect its opinion on the case.  ECF No. 6-15 at 10.

Upon review, the judge's behavior amounted to harmless error because it does not appear

that the judge's allegedly prejudicial behavior had a substantial and injurious effect or influence

in determining the jury's verdict.  Despite the trial judge's behavior there was sufficient evidence

to convince a jury of Djuric's guilt.  Furthermore, even if the handshake occurred as Djuric

described, there is still other convincing evidence which includes: (1) the fact that the victim

testified, (2) the victim was cross examined, (3) there was significant medical evidence of the

assault, and (4) the fact that the judge cured the error during the final jury instructions when he

stated:

> If I have said or done anything during the course of this trial that you consider to be
> any indication whatsoever of my view on this case, I can assure you that you are
> wrong.  I do not have an opinion because the decision is yours and it is not
> appropriate for me to give may indication, and frankly, you have been listening to the
> evidence; you will make the determination.  Disregard anything you may think I have
> said or done that would give you any indication whatsoever as to the ultimate issue

23

(1:07CV3416)

of the outcome of this lawsuit.

ECF No. 6-15 at 9.

This Court finds that the adjudication of the State Court of Appeals was not contrary to nor did it constitute an *objectively* unreasonable application of, clearly established federal law. As such, Djuric's first ground for relief should be denied.

## 2. **Ground Four**

Djuric alleges that he was denied due process of law when the State trial court allowed an investigating detective (Leslie Wilkins) to testify as to the truth of the allegations made by the alleged minor victim in this case.  ECF No. 1 at 4. Upon review, the State Court of Appeals held that, although the trial court erred in permitting the detective to offer an opinion as to the truth of the victim's testimony, the error was harmless because the (1) victim also testified, (2) the victim was subject to cross examination, (3) there was medical evidence of the assault, and (4) the detective's testimony was cumulative.  ECF No. 6-15 at 19.  Respondent contends that the State Court of Appeals adjudication should be upheld because the finding of harmless error is supported by the record.  ECF No. 6 at 33.

A district court's determination that an error implicating a constitutional right was harmless is reviewed *de novo* using the *Brecht* standard.  *Madrigal v. Bagley*, 413 F.3d 548, 551 (6th Cir. 2005).  Like the State Court of Appeals, the undersigned finds that the admission of the detective's testimony regarding the truth of the allegations made by the minor victim was error – harmless error.  *Brecht* requires that a federal habeas court "assess the prejudicial impact of constitutional error in a State court criminal trial under the 'substantial and injurious effect'

24

(1:07CV3416)

standard set forth in *Brecht[v. Abrahamson*, 507 U.S.619 (1993)]." Based upon the full record, it does not appear that this error had a substantial and injurious effect or influence in determining the jury's verdict. Upon reviewing the record, this Court finds that there was ample evidence to convince a jury of guilt despite the erroneous testimony of the detective. As the State Court of Appeals concluded, the victim testified and was cross examined; there was substantial medical evidence of sexual assault introduced. ECF No. 6-15 at 19. All of this rendered the information relayed by Detective cumulative.

For these reasons, the undersigned finds that the State Court of Appeals' finding of harmless error was not contrary to nor did it constitute an *objectively* unreasonable application of, clearly established federal law. As such, Djuric's fourth ground for relief should be denied.

### 3. Ground Five

Djuric alleges he was denied his right of confrontation and cross-examination when the court admitted testimony from witnesses who, in his estimation, merely related statements made to them by others.[14] ECF No. 1 at 4. Djuric claims that this violation of the Confrontation Clause constitutes plain error. ECF No. 7 at 14-15. Djuric rejected the State Court of Appeal's application of *Crawford v. Washington*, 541 U.S. 36, 68-69, and claims that the minor victim's testimony did not cure the constitutional violation which resulted from witnesses only repeating what others had told them. Djuric further contends that the statements should come in from the source of the statement and not be relayed through another witness, and that the violation denied Djuric rights of confrontation and cross examination.

---

[14] Referring to testimony of Detective Wilkins, Officer Herpka and Nurse Grafton.

25

(1:07CV3416)

The State Court of Appeals rejected the argument Djuric makes in Ground Five, holding that the victim testified at trial and was subject to cross-examination, and therefore the Confrontation Clause was not implicated.  ECF No. 6-15 at 20-21.  The State Court of Appeals found that, although the statements by Detective Wilkins and Officer Herpka were decidedly testimonial evidence, because those statements were not offered to prove the truth of the matter asserted, they were admissible.  ECF No. 6-15 at 20-21.  The State Court of Appeals also found that statements made by Nurse Grafton were admissible because "where victim of a criminal offense make a statement to a police officer identifying the accused, and subsequently presents herself for a medical examination for purposes of gathering evidence of the crime and repeats the identification, the latter statement is not made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial' because the declarant had previously made the identifying statement to the police."  ECF No. 6-15 at 21 (quoting *State v. Stahl*, 111 Ohio St.3d 186, 198, citing *Crawford*, 541 U.S. at 53).

Respondent contends that a constitutional violation has not been demonstrated because the State court adjudication was an *objectively* reasonable application of *Crawford.*  ECF No. 6 at 36.  The Court agrees.  Djuric has not established that the Ohio Court of Appeals' decision was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.

Contrary to Djuric's assertion, testimony complained of  does not trigger Sixth Amendment Confrontation Clause concerns primarily because the out-of-court declarant--the victim--testified at trial and was subjected to cross-examination by Djuric's defense counsel.  In

26

(1:07CV3416)

addressing this situation, the Supreme Court in *Crawford* stated:

> [W]hen the declarant appears for cross-examination at trial, the
> Confrontation Clause places no constraints at all on the use of his prior
> testimonial statements. *See California v. Green*, 399 U.S. 149, 162, 90
> S.Ct. 1930, 26 L.Ed.2d 489 (1970). It is therefore irrelevant that the
> reliability of some out-of-court statements "'cannot be replicated, even if
> the declarant testifies to the same matters in court.'" *Post*, at 1377 (quoting
> *United States v. Inadi*, 475 U.S. 387, 395, 106 S.Ct. 1121, 89 L.Ed.2d 390
> (1986)). The Clause does not bar admission of a statement so long as the
> declarant is present at trial to defend or explain it.

*Crawford*, 541 U.S. at 59 n. 9.  *See also United States v. Kappall*, 418 F.3d 550, 554 (6th Cir. 2005) (no Confrontation Clause violation where psychotherapist and pediatricians testified about what sexually abused children had told them because children gave direct testimony at trial and were subject to cross-examination).  Accordingly, because the victim testified at trial and was subject to cross-examination, Djuric has failed to establish a Confrontation Clause violation. *Id.*

Djuric's assertion that the complained of testimony deprived him of his rights of confrontation and cross examination are unavailing for other reasons.  As the State court indicated, the testimony of Detective Wilkins and Officer Herpka were not violative of the Confrontation Clause because their testimony was not admitted to establish the truth of the matter.

In *Crawford*, the Supreme Court held that out-of-court statements that are *testimonial* in nature can be barred by the Confrontation Clause.  541 U.S. at 36.  The Court, however, stipulated that the Confrontation Clause "does not bar the use of *testimonial* statements for purposes other than establishing the truth of the matter asserted." *Id.* at 59 n.9 (emphasis added).

Given that the testimony of the law enforcement officers was used only to demonstrate

(1:07CV3416)

the course of their investigation, this testimony was proper and its admittance cannot be deemed

either contrary to or an unreasonable application of *Crawford*.  *See* United States v. Gibbs, 506

F.3d 479, 486-87 (6th Cir. 2007) (quoting *United States v. Martin*, 897 F.2d 1368, 1371 (*6th Cir*.

1990)) ("In some circumstances, out of court statements offered for the limited purpose of

explaining why a government investigation was undertaken have been determined not to be

hearsay.").  *See also* Coonrod v. Wolfenbarger, 2010 U.S. Dist. Lexis 89680, *32 ("Evidence that

is provided merely by way of background or is offered only to explain how certain events came

to pass or why law enforcement officers took the actions they did is not offered for the truth of

the matter asserted, and thus cannot trigger a Confrontation Clause violation.").

     With respect to the State's court's determination that the nurse's testimony was

admissible, the undersigned finds this holding congruent to *Crawford* as well.  The State court's

opinion on this particular issue relied on the Supreme Court of Ohio's decision in State v. Stahl,

111 Ohio St. 3d 186 (2006).  ECF No. 6-15 at 20-21.  *Stahl*, is the controlling precedent looked

to by Ohio courts for the proper interpretation of *Crawford* when determining the admissibility of

statements made in the context of a medical examination.  *See* Dorsey v. Banks, 2010 U.S. Dist.

Lexis 102901, *67 (S.D. Ohio 2010).

> *Stahl* held that a statement given to a nurse during a rape examination was
> not testimonial within the meaning of *Crawford* because it interpreted
> *Crawford* to restrict testimonial statements to those made with an
> objectively-determinable expectation that they would be available for later
> use at trial. It held that statements made to a nurse in the context of a
> medical examination, even if a police officer was present at the time, were
> "given to a medical professional in the ordinary course of conducting a
> medical examination" and that an objective person in the position of the
> victim would not have believed that the primary purpose of the questions
> asked during the examination was to elicit statements for later use at trial,

(1:07CV3416)

> especially when similar statements had already been made to the
> investigating police officer.

*Id.* at*65-66.

The Court finds that the State court's reliance on *Stahl* and subsequent holding that Nurse

Grafton's testimony was admissible because it was not testimonial within the meaning of

*Crawford* was a permissible interpretation of federal law.[15]  Thus, even if there were validity to

Djuric's assertion that the State court erroneously decided this issue, Djuric would still not be

entitled to relief as he has failed to demonstrate to the Court that the State court's decision was an

unreasonable application of Crawford.  *See Dorsey*, 2010 U.S. Dist. Lexis at *67-72 (finding that

the State court's application of *Crawford* in relying on the holding in *Stahl*, was probably not

correct, however, the court held that the petitioner was still not entitled to relief because the State

court's decision was a reasonable application of *Crawford*).

Accordingly Djuric's fifth ground for relief should be denied.

### 4. **Ground Seven**

Djuric alleges he was denied due process of law when he was convicted under

insufficient evidence to permit a rational factfinder to return a verdict of guilty.  ECF No. 1 at 4.

Djuric disputes the assertion that the removal element of the crime was satisfied.  ECF No. 7 at

20-22.  Djuric asserts that he "removed" no one; the victim was not prevented from leaving the

---

[15] "While *Crawford* changed the law concerning the interplay between the Confrontation Clause and long-recognized exceptions to the hearsay rule, concluding that statements which fall within a hearsay exception are not beyond the reach of the Confrontation Clause if the hearsay statements are 'testimonial' in nature, Crawford explicitly left open the question of what types of statements, beyond those given at prior judicial proceedings or to police interrogators, could be characterized as 'testimonial.'" *Dorsey,* 2010 U.S. Dist. Lexis at *70-71 (citing *United States v. Hadley*, 431 F.3d 484, 495 (6th Cir. 2005).

(1:07CV3416)

bedroom or restrained at any time; and that there is no evidence to show that Djuric "removed" the victim.  ECF No. 7 at 22.

Respondent claimed that the evidence found by the State Court of Appeals demonstrated sufficient evidence to convict on the kidnaping count.  ECF No. 6-1 at 41.  Djuric utilized deception through the ploy of retrieval of his cat from the bedroom to lure the victim from the safety of the living room. Further, Respondent asserts that the State courts have found this type of behavior sufficient to constitute the "removing" element of the kidnaping offense and this interpretation of the State law must be given deference when reviewing a habeas petition.  ECF No. 6-1 at 41.

A claim that the evidence was insufficient to convict a petitioner is cognizable under §2254.  *See Brown v. Palmer, 441 F.3d 347, 351 (6th Cir. 2006)*.  Because the Due Process clause "forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt," a State law question regarding the elements of the crime predicates the enforcement of [petitioner's] federal constitutional right." *Fiore v. White, 531 US 225, 228-29 (2001)*; *Richey v. Mitchell, 395 F.3d 660, 672 (6th Cir. 2005)*.  Sufficient evidence supports a conviction if after viewing the evidence in the light most favorable to the prosecution the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia, 443 US 307, 324 (1979)*.

After a review of the record and analyzing State case that referenced *Jackson v. Virginia*, the State Court of Appeals held that there was sufficient evidence to prove beyond a reasonable doubt that the victim was removed from the living room where her father was to the bedroom by

(1:07CV3416)

Djuric's deceptive ploy to find his cat.

The State Court of Appeals adjudication was not contrary to nor was it based upon an *objectively* unreasonable application of, clearly established federal law.  As such, Djuric's seventh ground for relief should be denied.

### E.  Ground Six is a Not Cognizable issue under §2254

Djuric alleges that he was denied due process of law and a fair trial because of cumulative errors committed during the course of the trial, during which inadmissible and prejudicial evidence was offered against him.  ECF No. 1 at 4.  Djuric insists that cumulative errors can result in the denial of a fair trial.  ECF No. 7 at 19-20.

Respondent argues that the Supreme Court has not held that constitutional claims that would individually support habeas relief may be cumulated in order to support relief.  Therefore, Djuric's cumulative claim is not cognizable in a federal habeas proceeding, and even if errors could be combined all of Djuric's errors have been proven to be without merit or harmless.  ECF No. 6-1 at 37.  Respondent's argument is well taken.

In reviewing Djuric's case, the State Court of Appeals found that, according to Ohio law, separate harmless errors may violate a defendant's rights to a fair trial when considered together, if there is a reasonable probability that the outcome of the trial would have been different but for the combination of the separately occurring harmless errors.  ECF No. 6-15 at 20.  Relative to Djuric's claims, however, the State Court of Appeals ultimately held that "although several errors were committed at trial, we do not find a reasonable probability that the outcome of the trial would have been different."  ECF No. 6-15 at 20.

31

(1:07CV3416)

"The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Millender v. Adams*, 376 F.3d 520, 529 (6th Cir. 2004) (*quoting Lorraine v. Coyle*, 291 F.3d 416 (6th Cir. 2002). The Sixth Circuit, likewise, has not held that cumulative error can form the basis for habeas relief. *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc), *cert denied*. In fact, a fairly recent Sixth Circuit case has proclaimed that claims of cumulated trial errors are not cognizable under §2254. *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (*citing Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005); *see also Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), cert denied, 127 S.Ct. 1485 (2007) (while we have recognized that errors that might not be so prejudicial as to amount to a deprivation of due process when considered alone may cumulatively produce trial setting that is fundamentally unfair, the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief.") Moreover, even assuming that cumulative errors could form the basis for habeas relief, a cumulative error claim fails where there are simply no errors to cumulate. *See Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007) (en banc), *cert denied*.

The Supreme Court and the Sixth Circuit have each held that cumulative error cannot form the basis for habeas corpus relief. Additionally, when called upon to address this specific question relative to Djuric, the State Court of Appeals found that, although several errors had occurred, there was no reasonable probability that the outcome of the trial would have been different. ECF No. 6-15 at 20. Moreover, as shown above, there are no errors to accommodate Djuric's hypothetical cumulation. For each of these reasons, the undersigned  finds that Ground Six is not cognizable issue under §2254 and Djuric's sixth ground for relief should be denied.

(1:07CV3416)

### III.  <u>Recommendation</u>

In light of all the foregoing, it is recommended that Stevo Djuric's petition for a writ of

habeas corpus be dismissed in its entirety without further proceedings.


<u>Dated: December 7, 2010</u>                          <u>    /s/ Benita Y. Pearson           </u>
                                                        United States Magistrate Judge



### <u>OBJECTIONS</u>

Objections to this Report and Recommendation must be filed with the Clerk of Courts
within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified
time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d
947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111
(1986).

(1:07CV3416)

## Appendix A
### Direct Appeal

Defendant was denied a fair trial when the Court, through its conduct and questioning enhanced the credibility of a state's witness.

Defendant was denied his constitutional right to a public trial when the Court sealed the courtroom during the testimony of Natalie Leissa.

Defendant was denied due process of law when the Court failed to conduct a pretrial evidentiary hearing on Defendant's motion to suppress.

Defendant was denied due process of law when the court overruled his motion to suppress.

Defendant was denied due process of law when the Court allowed Detective Leslie Wilkins to testify as to the truth of the allegations made by Natalie Leissa.

Defendant was denied his right of confrontation and cross-examination when the Court admitted testimony of hearsay evidence.

Defendant was denied due process of law and a fair trial by reason of cumulative errors committed during the course of the trial.

Defendant was denied due process of law when the Court denied defendant's motion for judgment of acquittal as to the kidnaping count.

Defendant was denied due process of law when he was found not guilty and guilty of gross sexual imposition and kidnaping involving identical allegations.

Defendant was denied due process of law when he was sentenced to more than a minimum sentence.

Defendant was denied due process of law when the Court in recording the verdict of the jury and sentencing stated defendant had been found guilty of gross sexual imposition with a sexually violent predator specification.

(1:07CV3416)

## Appendix B
## Ohio Supreme Court

**Proposition of Law No. 1**: Defendant has been denied a fair trial when the Court, through its conduct of shaking hands with the Natalie Leissa in the presence of the jury and through statements which enhanced the credibility of a state's witness Natalie Leissa.

**Proposition of Law No. 2:** Defendant has been denied his constitutional right to a public trial when the Court orders the courtroom to be sealed during the testimony of a state's witness.

**Proposition of Law No. 3:** Defendant has been denied due process of law when the Court fails to conduct a pretrial evidentiary hearing concerning Defendant's motion to suppress.

**Proposition of Law No. 4:** Defendant has been denied due process of law when the court overrules a motion to suppress when Defendant has been arrested without a warrant in his own home and held incommunicado at a police station without access to a phone.

**Proposition of Law No. 5:** Defendant has been denied due process of law when the Court allows an investigating detective to testify as to the truth of the allegations made by an alleged minor victim.

**Proposition of Law No. 6:** Defendant has been denied his right of confrontation and cross examination when the Court admits testimony from witnesses who merely relate statements by    others.

**Proposition of Law No. 7:** Defendant has been denied due process of law and a fair trial where, through cumulative errors, whereby inadmissible and prejudicial evidence has been offered.

**Proposition of Law No. 8:** Defendant has been denied due process of law when he has been convicted where there is insufficient evidence to permit a rational factfinder to return a verdict of guilty.

35

(1:07CV3416)

## Appendix C
### Writ of Habeas Corpus Grounds for Relief

**Ground for Relief No. 1: Fourteenth Amendment**.
> **Supporting Facts**: Petitioner was denied a fair trial and due process of law when the trial court shook hands with Natalie Leissa in the presence of the jury and made statements in the presence of the jury which enhanced the credibility of the Natalie Leissa.

**Ground for Relief No. 2: Six and Fourteenth Amendment**.
> **Supporting Facts**: Petitioner was denied his constitutional right to a public trial when the court ordered that the courtroom be sealed during the testimony of Natalie Leissa.

**Ground for Relief No. 3: Fourth and Fourteenth Amendment**.
> **Supporting Facts**: Petitioner was denied due process of law when a trial court failed to conduct a pretrial evidentiary hearing concerning petitioner's motion to suppress. Petitioner was arrested at his home without a warrant. Petitioner was held incommunicado at a police station without access to a phone and during that period of time he was questioned by the police. Petitioner was a native of Bosnia a [sic] lacked the communication skills to understand what was going on during this period of time.

**Ground for Relief No. 4: Fourteenth Amendment.**
> **Supporting Facts**: Petitioner was denied due process of law when the court allowed an investigating detective to testify as to the truth of the allegations made by the alleged minor victim in this case.

**Ground for Relief No. 5: Six and Fourteenth Amendment.**
> **Supporting Facts:** Petitioner was denied his right of confrontation and cross-examination when the court admitted testimony from other witnesses who merely related statements made to them by others.

**Ground for Relief No. 6: Fourteenth Amendment**.
> **Supporting Facts**: Petitioner was denied due process of law and a fair trial because of cumulative errors committed during the course of the trial during which inadmissible and prejudicial evidence was offered against petitioner.

**Ground for Relief No. 7: Fourteenth Amendment.**
> **Supporting Facts:** Petitioner was denied due process of law when he was convicted of guilty.

36